# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | CR424-001 |
| | ) | |
| AUSTIN MICHAEL BURAK, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER</u>

Defendant Austin Michael Burak is charged with one count of Attempted Coercion and Enticement of a Minor to Engage in Sexual Activity in violation of 18 U.S.C. § 2422(b), one count of Abusive Sexual Contact of a Child in violation of 18 U.S.C. § 2244(a)(5), one count of Coercion and Enticement of a Minor to Engage in Sexual Activity in violation of 18 U.S.C. § 2422(b), and one count of Aggravated Sexual Abuse of a Child in violation of 18 U.S.C. § 2241(c).  Doc. 26 (Superseding Indictment).  He has filed a Motion to Compel Discovery, doc. 72, and a Petition for a Writ of Mandamus, doc. 74.  The Government has responded to both Motions.  Doc. 77.  The Motions have been referred to the undersigned pursuant to 28 U.S.C. § 636 and are ripe for disposition.

Defendant's Motion to Compel seeks an order compelling the Government to produce unredacted discovery documents that have previously been provided in "heavily redacted" form.  Doc. 72 at 6. Defendant references "DFCS reports" and "CID reports," but does not specify the documents with the challenged redactions.  *Id.*  Defendant also seeks compulsory production of a "full casefile or index of what has been done by the FBI," "any and all recordings or handwritten notes or any other type of note taken by the agents during . . . any of the interviews that have been conducted by the FBI," and any tapes or recordings of interviews.  *Id.* at 9-10.  Next, Defendant seeks unspecified "medical and school records," which he contends would show the victims' interactions with "a number of school and mental health professionals."  *Id.* at 10. Alternatively, Defendant seeks a "timeline of movement" for the victims' families, since "[t]he stepfather was on active duty," which "means the Government is able to obtain information through the Army as to the duty stations and locations where the family resided at all times."  *Id.* at 11-12.  Defendant can then "begin the process of attempting to locate records and issue subpoenas" for the medical and school records.  *Id.* at

12.   The Government opposes the request for an order compelling it to produce these materials.  *See generally* doc. 77.

Defendant's Motion to Compel also seeks "the full military procedural records" from a prior court martial involving the Defendant, "to include all transcripts, filings and the full appeal record."  Doc. 72 at 12-13.  The Defendant's Petition for a Writ of Mandamus seeks the same military records.  *See* doc. 74.  In it, Defendant seeks access to "a full, unredacted and unsealed copy of all court martial proceedings against the Defendant."  *Id.* at 1.  Unlike the requests discussed above, the Government does not entirely oppose Defendant's requests related to the court martial documents.  *See* doc. 77 at 21-22.  It asks that either "the Court be allowed to conduct an *in camera* review to determine whether any of the material should be unsealed and disclosed to the parties," or, alternatively, the Government be allowed "to conduct an initial review to determine if any of the materials should not be disclosed."  *Id.* at 5.  The Court will first address the materials which the Government opposes producing and will then turn to the Defendant's requests for the court martial documents.

"There is no general constitutional right to discovery in a criminal case. . . ." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).  In *United States v. Jordan*, 316 F.3d 1215 (11th Cir. 2003), the Eleventh Circuit set out the Government's pretrial disclosure requirements in a criminal case. The "starting point" is Rule 16(a) of the Federal Rules of Criminal Procedure, "which spells out the materials the prosecution must produce on the defendant's request." *Id.* at 1249.  As the Court explained, "Rule 16(a) only applies to materials within the 'possession, custody, or control of the government,'" which includes "materials in the hands of a governmental investigatory agency closely connected to the prosecutor." *Id.*  The Government is under a "continuing duty to disclose any evidence that is subject to discovery or inspection." *Id.* (citing Fed. R. Crim. P. 16(c)).

As for the Government's obligation to disclose documents and tangible objects, the Rule 16(a) provides:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i)      the item is material to preparing the defense;

4

> (ii)   the government intends to use the item in its case-in-chief at trial; or
>
> (iii)  the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E).  To obtain an item in the first category, the defendant must demonstrate that the item is "material to the preparation of his defense," which requires "a specific request for the item together with an explanation of how it will be helpful to the defense." *Jordan*, 316 F.3d at 1250 (internal quotation marks and citation omitted).  "Helpful" in this respect means that the item is relevant to the preparation of the defense and not necessarily exculpatory, *id.* (citing *United States v. Marshall*, 132 F.3d 63, 67-68 (D.C. Cir. 1998)), but the defendant must show "some indication that the pretrial disclosure of the item would . . . enable the defendant to significantly alter the quantum of proof in his favor," *id.* at 1251 (citing *United States v. Ross*, 511 F.2d 757, 763 (5th Cir. 1975)).[1]  "A general description of the item will not suffice; neither will a conclusory argument that the requested item is material to the defense." *Id.* at 1250.  The defendant has the burden of showing that his

---

[1] Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

requested discovery is material. *United States v. Buckley*, 586 F.2d 498, 506 (5th Cir. 1978).

The discovery afforded by Rule 16(a)(1)(E) is limited by Rules 16(a)(2) and 16(a)(3). Rule 16(a)(2) exempts from disclosure "reports, memoranda, or other internal government documents made by the attorney for the government or any other government agent investigating or prosecuting the case," and "statements made by government witnesses or prospective government witnesses." Rule 16(a)(3) exempts the discovery of statements of persons who have testified before a grand jury. However, as the Eleventh Circuit noted in *Jordan*, the Jencks Act, 18 U.S.C. § 3500,[2] "mandates that a statement by a prospective prosecution witness to an investigative agent or the grand jury must be provided to the defense after the witness has testified on direct examination." 316 F.3d at 1251.

---

[2] "The Jencks Act provides that in criminal prosecutions brought by the United States, no statement made by a government witness may be the subject of discovery until after that witness has testified at trial." *Jordan*, 316 F.3d at 1233 n.28 (citing 18 U.S.C. § 3500(a), (b)). The Government must produce a witness' Jencks Act statements when the witness is tendered for cross examination. *Id.* at 1252. However, "it is customary in many jurisdictions for the government to produce Jencks materials prior to trial." *Id.* at 1251 n.78.

In addition to the disclosure requirements of Rule 16(a), the Government is also constitutionally obligated to comply with *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150, 154 (1972).  The Court in *Jordan* summarized the Government's *Brady* obligation as follows:

> *Brady* requires the prosecutor to turn over to the defense evidence that is favorable to the accused, even though it is not subject to discovery under Rule 16(a), since, eventually, such evidence may undermine the confidence in the outcome of the trial.  [Cit.]  The defendant's right to the disclosure of favorable evidence, however, does not create a broad, constitutionally required right of discovery.  [Cit.]  Indeed, a defendant's right to discover exculpatory evidence does not include the unsupervised right to search through the government's files, [cit.], nor does the right require the prosecution to deliver its entire file to the defense.  [Cit.]  Rather, *Brady* obligates the government to disclose only favorable evidence that is material.  The touchstone of materiality is a reasonable probability of a different result.  [Cit.]  Accordingly, under Brady, the government need only disclose during pretrial discovery (or later, at the trial) evidence which, in the eyes of a neutral and objective observer, could alter the outcome of the proceedings.

316 F.3d at 1251-52 (internal citations, quotations, and alterations omitted).  In *Giglio*, the Supreme Court recognized that "*Brady* requires the government to produce for the defense impeachment evidence against government witnesses." *United States v. Bueno-Sierra*, 99 F.3d 375, 379 (11th Cir. 1996) (citing *Giglio*, 405 U.S. 150); *see also United States v.*

*Bagley*, 473 U.S. 667, 676 (1985) ("Impeachment evidence . . . falls within the *Brady* rule").

With these governing standards in mind, the Court turns to the categories of documents and information Defendant seeks. First, Defendant complains about the "heavily redacted" materials provided by the Government. Doc. 72 at 6-9.[3] In particular, Defendant objects to the "redactions of almost every name of pertinent witnesses in the case, and of the witnesses' phone numbers and contact information," making it "essentially impossible to identify and contact or otherwise investigate any witnesses, even witnesses that are not the minor victims." *Id.* a 6. Defendant argues that the redactions violate his constitutional rights, "impeding his right to a full and fair defense, his right to the effective assistance of counsel . . . and his Sixth Amendment right to confront the witnesses against him." *Id.* at 8.

---

[3] These redacted documents are only generally identified as the Government's "initial disclosure," so the specific documents at issue are not clear. Doc. 72 at 6. Based on the Defendant's request that "a new set of discovery be provided" with less redactions, *id.* at 8, it appears that the complaint about redactions applies to the entirety of the Government's production thus far, absent a more recent production that included less redactions and are therefore "easier to navigate," *id.* at 6. The only specific materials identified are the "full DFCS records" and "the CID reports." *Id.*

Because the Defendant has not identified the specific redacted documents at issue, he has not demonstrated that the Government was obligated to produce the documents under Rule 16. *See* doc. 72 at 6-9. To merit compulsory production, Defendant must do more than provide a "general description of the item." *Jordan*, 316 F.3d at 1250 (discussing demonstration required for disclosure under Rule 16). *Brady* also does not provide Defendant with "the unsupervised right to search through the government's files." *Id.* at 1251-52 (internal citation, quotation, and alteration omitted). The Government correctly notes that the Defendant "is simply not entitled to the wholesale production of reports related to the investigation." Doc. 77 at 6 (citing Fed. R. Crim. P. 16(a)(2)); *see also Jordan*, 316 F.3d at 1252 (*Brady* does not "require the prosecution to deliver its entire file to the defense."). The Government contends that if it has any obligation to produce the documents, it is pursuant to the Jencks Act and therefore does not arise until after the relevant witness has testified on direct examination at trial. *Id.*; *see also* Fed. R. Crim. P. 16(a)(2). Defendant did not reply to offer any additional argument on this point. *See generally* docket.

Instead, the thrust of the Defendant's argument supporting his request for unredacted version of the previously produced discovery is the need for identification of the witnesses listed in the reports and their contact information.  *See* doc. 72 at 6-8.  Rule 16(a) does not provide for disclosure of the identities of Government witnesses, nor does any other authority provide a criminal defendant with an unfettered right to the disclosure of such information.  *See United States v. Johnson*, 713 F.2d 654, 659 (11th Cir. 1983) ("A criminal defendant has no absolute right to a list of the government's witnesses in advance of the trial.").  Nevertheless, the Government contends it has "provided the names of the individuals referenced in the disclosed materials."  Doc. 77 at 9.

Defendant also asserts that the Government has an affirmative obligation to "investigate" material favorable to the defense.  Doc. 72 at 7-8.  However, "[t]he *Brady* mandate only applies to information in the possession of the prosecutor or anyone under his authority that defense counsel could not have obtained by exercising reasonable diligence through other means."  *United States v. Irizarry*, 2014 WL 12641991, at *4 (M.D. Fla. Nov. 24, 2014) (citing *United States v. Naranjo*, 634 F.3d 1198, 1212 (11th Cir. 2011)).  The Defendant has not identified any

specific redacted information that the Government is affirmatively obligated to produce under *Brady*. *See* doc. 72 at 6-8. An argument that the redacted information could *possibly* lead to interviews that could *possibly* be helpful to the defense is not sufficient. *Cf. United States v. Agurs*, 427 U.S. 97, 109-10 (1976) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."). Defendant has not shown that the Government has an obligation to provide "a new set of discovery" with fewer redactions. The Motion to Compel is, therefore, **DENIED, IN PART**. Doc. 72, in part.

Next, Defendant asks for "any and all recordings or handwritten notes or any other type of note taken by the agents during . . . any of the interviews that have been conducted by the FBI." Doc. 72 at 10. Defendant also apparently seeks the "full casefile or index of what has been done by the FBI." *Id.* at 9. As an initial matter, the Defendant does not specify what obligates the Government to disclose the investigating agency's "full casefile." *Id.* Neither Rule 16 nor *Brady* demand such

wholesale production.  *See* Fed. R. Crim. P. 16(a)(2); *Jordan*, 316 F.3d at 1252.

As for the investigators' notes, the Government states that "*many law enforcement notes have already been provided.*"  Doc. 77 at 13 (emphasis added).  That qualification implies some law enforcement notes exist which have not been provided.  In some instances, the Government might be obligated to produce certain notes taken by an investigator.  For example, if the Defendant makes a showing that the notes are material to the defense under Rule 16(a)(1)(C), or favorable to the defense and material under *Brady*, they could be subject to production.  *See, e.g.*, *United States v. Brown*, 303 F.3d 582, 591-93 (5th Cir. 2002).  However, the Defendant has not made the requisite showing under any of these theories.  *See* doc. 72 at 10 (stating simply that the Defendant "would like" "any and all" notes).

Additionally, the notes could qualify, in some instances, as a "statement" under the Jencks Act.  *See United States v. Lloyd*, 743 F.2d 1555, 1565-67 (11th Cir. 1984).  Defendant has not argued that any particular material qualifies as a Jencks Act "statement," *see* 18 U.S.C. § 3500(e), and even if he had, compulsory production under the Jencks

Act would be premature at this stage of the proceedings, *see* 18 U.S.C. § 3500(a).  Because Defendant has not shown that he is entitled to the full FBI casefile or "any and all recordings or handwritten notes taken by the agents during any of the interviews that have been conducted by the FBI," the Motion to Compel is **DENIED**, **IN PART**.  Doc. 72, in part.

Defendant also seeks the victims' "school records" and "medical records."  Doc. 72 at 10.  Defendant believes the victims have "interacted with a number of school and mental health professionals," including a school counselor and a hospital, and seek records from those encounters. *Id.* at 10-11.  There is nothing to indicate these records are in the "possession, custody, or control" of the Government or an investigatory agency closely connected to the prosecutor, as required by Rule 16(a).  *See Jordan*, 316 F.3d at 1249.  Similarly, as discussed above, the due process protections afforded by *Brady* only apply to information in the possession of the prosecutor or anyone under his authority.  *Irizarry*, 2014 WL 12641991, at *4.  The Defendant has not identified any authority that obligates the Government to obtain records from third-party medical providers or schools.  *See* doc. 72 at 10-11.  Perhaps anticipating this problem, the Defendant seeks, in the alternative, "a timeline of

movement" of the victims' family, since the Government could gather information, from various sources, about where, geographically, the family moved. *Id*. at 11-12.   The Defendant has equally failed to demonstrate what obligation the Government could possibly have to gather information not currently in its possession and distill it down into a helpful format for the Defendant. *Id*.   The Defendants Motion to Compel school records, medical records, and a "timeline of movement" is, therefore, **DENIED**.   Doc. 72, in part.

Finally, the Defendant seeks "the full military procedural records from the prior prosecution to include all transcripts, filings and the full appeal record." Doc. 72 at 12.   Although the Defendant has requested this information directly from the Office of the Clerk of Court, United States Army Court of Criminal Appeals, there is no indication as to how long the request might take, or if it will be successful. *Id*. at 12-13. Additionally, the records are sealed, and there is concern that the records provided "will be subject to that [sealing] order." *Id*. at 13.   Defendant seeks the same records in his Petition for a Writ of Mandamus.   Doc. 74 at 1 (seeking "access to a full, unredacted and unsealed copy of all court marital proceedings against the Defendant.").   The Government does not

oppose Defendant's Petition for Writ of Mandamus, contingent on the Court performing an *in camera* review of the sealed materials "to protect the victims' privacy and rights."  Doc. 77 at 21-22.  Given that position, the Government also does not explicitly object to the Motion to Compel these documents.  *Id.*  However, the Government "reserves its right to file a motion objecting to the Defendant's claim that the sealed court-martial records are within the Government's control."  *Id.* at 22 n.9.

Given the Government's indication that it disputes that the court marital records are currently in its control for purposes of the Defendant's Motion to Compel, the Court will first determine whether Defendant is entitled to mandamus for production of the sealed records. Defendant relies on Rule 21 of the Federal Rules of Appellate Procedure to provide the "framework" for his request for mandamus.  Doc. 74 at 1. The writ of mandamus contemplated by Rule 21 is "a drastic and extraordinary remedy . . . that is available only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so . . . ." *United States v. Shalhoub*, 855 F.3d 1255, 1263 (11th Cir. 2017) (internal citations and quotations omitted).  It is not apparent that it is applicable here, since

there is nothing to indicate that the United States Army's trial court is an "inferior court" to this United States District Court. Additionally, even if the Court ignored Defendant's failure to establish the application of his proffered authority, he has not complied with the procedural requirement of Rule 21 that he "provide a copy to the trial-court judge." *See* Fed. R. App. P. 21(a)(1). However, there are two other sources for this Court's authority to grant mandamus, the Mandamus Act or the All Writs Act.

> The Eleventh Circuit has explained the scope of the Mandamus Act.

> The Mandamus Act provides as follows: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "[M]andamus is an extraordinary remedy which should be utilized only in the clearest and most compelling of cases." *Cash v. Barnhart*, 327 F.3d 1252, 1257 (11th Cir. 2003) (quoting *Carter v. Seamans*, 411 F.2d 767, 773 (5th Cir. 1969)). "[T]he test for mandamus jurisdiction is 'whether mandamus would be an appropriate means of relief.' " *United States v. Salmona*, 810 F.3d 806, 811 (11th Cir. 2016) (quoting *Cash*, 327 F.3d at 1258). Mandamus jurisdiction may be exercised "only if (1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) no other adequate remedy is available." *Serrano v. U.S. Att'y Gen.*, 655 F.3d 1260, 1263 (11th Cir. 2011) (citing *Cash*, 327 F.3d at 1258). "The party seeking mandamus has the burden of demonstrating that his right to the writ is clear and indisputable." *Id.* at 1260, 1263–64 (11th Cir. 2011) (citing *In re BellSouth Corp.*, 334 F.3d 941, 953 (11th Cir.

2003)).  "Put another way, a writ of mandamus 'is intended to
provide a remedy for a plaintiff only if he has exhausted all
other avenues of relief and only if the defendant owes him a
clear nondiscretionary duty.' "   *Cash*, 327 F.3d at 1258
(quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)).

*Hakki v. Sec'y, Dept. of Veterans Affs.,* 7 F.4th 1012, 1036-37 (11th Cir.

2021).  Facially, this statute does not appear to apply to Defendant's

request, since the Petition was filed in this criminal proceeding, and not

as a separate "action in the nature of mandamus."  28 U.S.C. § 1361.

Recently, in the Southern District of Ohio, a criminal defendant sought

mandamus to prevent the government from introducing certain

testimony.  *United States v. Moore*, 2024 WL 4379748, at *13 (S.D. Ohio

Oc. 3, 2024).  The court found that the motion "fail[ed] along several

dimensions," the first of which was the criminal nature of the case.  *Id.*

Similarly, here, "[t]he case before the Court is criminal in nature and

therefore the Court is not presiding over an action 'in the nature of

mandamus.'"  *Id.* (quoting 28 U.S.C. § 1361).

The other potential avenue, the All Writs Act, states: "The Supreme

Court and all courts established by Act of Congress may issue all writs

necessary or appropriate in aid of their respective jurisdictions and

agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  "[I]t

17

is a codification of the federal courts' traditional, inherent power to protect the jurisdiction they already have, derived from some other source." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1099 (11th Cir. 2004) (citing *Procup v. Strickland*, 792 F.2d 1069, 1074 (11th Cir. 1986)); *see also Clinton v. Goldsmith*, 526 U.S. 529, 534 (1999) ("While the All Writs Act authorizes employment of extraordinary writs, it confines the authority to the issuance of process 'in aid of' the issuing court's jurisdiction.").

The Defendant's petition does not address the issue of whether this Court has jurisdiction over the custodian of the court martial records; the petition does not even specify the current records custodian. *See* doc. 74 at 2 (discussing the possibility that the records have been moved to Fort Stewart). The Government's reservation of its right to challenge the Defendant's position that the court martial records are within its control implies its contention that they are in the possession of a third-party. *See* doc. 77 at 22 n. 9. Whether the United States Attorney for the Southern District of Georgia, who is prosecuting this case on behalf of the United States, can be directed, via a writ of mandamus, to produce records that

have been sealed by a military judge during a United States Army court martial proceeding remains an open question.

If the current record custodian were found to be a third-party, "[t]he power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action . . . are in a position to frustrate the implementation of a court order or the proper administration of justice." *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977). "[T]he All Writs Act 'fill[s] the interstices of federal judicial power when those gaps threate[n] to thwart the otherwise proper exercise of federal courts' jurisdiction.'" *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) (quoting *Penn. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 41 (1985)). As the Second Circuit has explained, "[a]n important feature of the All-Writs Act is its grant of authority to enjoin and bind non-parties to an action when needed to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction." *In re Baldwin-United Corp.*, 770 F.2d 328, 338 (2d Cir. 1985). "The Supreme Court has recognized five requirements that must be met before a court can compel under the All Writs Act the assistance of a third party in a criminal investigation (1)

the order must be necessary or appropriate to effectuate a previously issued order, (2) it must not be covered by another statute, (3) it must not be inconsistent with the intent of Congress, (4) the third party must not be too far removed from the underlying case, and (5) the burden imposed on the third party must not be unreasonable." *United States v. Blake*, 868 F.3d 960, 970–71 (11th Cir. 2017).

As to the first requirement, it is not apparent what "previously issued order" requires an order directing production of the sealed military court records. Relative to the second requirement, where there are alternative remedies available, "resort to the All Writs Act [is] . . . out of bounds[.]" *Clinton*, 526 U.S. at 537. The Supreme Court has clarified:

> The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling. Although that Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate.

*Penn. Bureau of Corr.*, 474 U.S. at 43. Defendant himself acknowledges that there is another path to obtain the records, and that he has, through his counsel, formally requested them through the Clerk of Court for the

Military Court of Appeals.  Doc. 74 at 5-6.  The Clerk "has acknowledged the request and confirmed that the request is in the que to be addressed." *Id.* at 6.  Defendant is concerned that the Clerk is "unable to estimate the time that would be necessary to fulfill the request."  *Id.*  A concern as to how an available process might work, compared to a lack of an available process, is not sufficient to justify invocation of the Act.

For these reasons, despite the Government's non-opposition to the Petition for a Writ of Mandamus, *see* doc. 77 at 21, the Court is unable to grant the Petition on the record before it.   Additionally, given the Government's reservation of its right to oppose the Defendant's Motion to Compel the court martial records, the Court is unable to dispose of the remainder of that motion, either.   Therefore, further briefing and a hearing are both necessary.  To ensure the most efficient use of time, the parties are **DIRECTED** to first brief the following issues.  Each party is **DIRECTED** to submit a brief within 14 days of the date of this Order, presenting argument on the following:

1.  Does the United States, as the entity prosecuting this criminal case, have possession, custody, or control of the records such that the Court can compel their production?

2.  If not the United States, who has current control of the sealed court-martial records?

3. Can the Court exercise its jurisdiction over the current records custodian under the All Writs Act to compel their production?

4. What is the effect of the Military Judge's sealing Order on the current records custodian, including the United States, and does this Court have jurisdiction to countermand that Order?

The Court will set a hearing, by separate notice, for the Petition for Writ of Mandamus, doc. 74, and the Motion to Compel the court martial records, doc. 72, in part, on Friday, December 13, 2024 at 9:00 a.m. Those Motions remain pending. The remainder of the Motion to Compel is, for the reasons discussed above, **DENIED**. Doc. 72, in part.

**SO ORDERED,** this 29th day of October, 2024.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA