IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CASE NO.: 4:24-cr-1 |
| AUSTIN BURAK, | |
| Defendant. | |

**O R D E R**

The Court **DENIES** Defendant's "Combined Motion for New Trial and Judgment of Aquittal [sic]." (Doc. 188.)

**BACKGROUND**

On March 6, 2024, Defendant was charged by Superseding Indictment with abusive sexual contact of a minor in violation of 18 U.S.C. § 2244(a)(5) (Count Two), and aggravated sexual abuse of a child in violation of 18 U.S.C. § 2241(c) (Count Four). (Doc. 26.)[1] Count Two of the Superseding Indictment alleged that, in or about August 2017, on Fort Stewart Military Reservation, Defendant molested MV1, who was less than 12 years old, by touching MV1's genitalia, anus, groin, breast, inner thigh and buttock with the intent to abuse, humiliate, harass, degrade, and arouse and gratify the sexual desires of any person. (Id. at p. 2.) Count Four alleged that, in the same time period, Defendant sexually abused MV2, who was between the ages of 12-years-old and 16-years-old by forcing MV2 onto the floor, laying on top of MV2, and forcibly inserting his penis into MV2's anus. (Id. at p. 4.) After a four-day trial, the jury found Defendant

---

[1] The Government dismissed Counts One and Three of the Superseding Indictment before trial. (Doc. 145.)

guilty of both charges. (Doc. 168.) Defendant has moved for judgment of acquittal or a new trial. (Doc. 188.) The Government has responded in opposition. (Doc. 195.)

## DISCUSSION

### I. Motion for Judgment of Acquittal

A motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 "is a direct challenge to the sufficiency of the evidence presented against the defendant." United States v. Aibejeris, 28 F.3d 97, 98 (11th Cir. 1994). In considering a motion for judgment of acquittal, the Court views the evidence in the light most favorable to the verdict. United States v. Sellers, 871 F.2d 1019, 1021 (11th Cir. 1989). Moreover, "the court must assume the truth of the Government's evidence." United States v. Pate, No. 1:18-cr-008, 2019 WL 1244722, at *3 (S.D. Ga Mar. 18, 2019) (citing United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir. 1985)). The issue before the Court is "whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt." Id. (citing United States v. O'Keefe, 825 F.2d 314, 319 (11th Cir. 1987)). The verdict must stand "unless no trier of fact could have found guilt beyond a reasonable doubt." United States v. Pinerio, 389 F.3d 1359, 1367 (11th Cir. 2004) (citation omitted).

While Defendant cites to Rule 29 and requests that the Court enter a judgment of acquittal at the beginning of his Motion, he offers no argument in support of this request, and he does not challenge the sufficiency of the Government's evidence. Nor could he. The Government presented a plethora of evidence that Defendant abused MV1 and MV2 while in staying in their parents' home on Fort Stewart. As the Government recounts in its Response, (doc. 195, pp. 2–4), MV1 and MV2 testified about Defendant's abuse in painstaking detail, (see doc. 178, pp. 98–125, pp. 157–77.) This testimony alone could uphold Defendant's convictions. The Government supported MV1 and MV2's accounts with two other victims who testified pursuant to Federal

Rules of Evidence 404(b), 413, and 414.  (Id. at pp. 58–84, 90.)  One of these witness, Victim 1, testified to years of abuse by Defendant when she was between the ages of five-years-old and fourteen-years-old.  (Id. at pp. 58–84.)  Additionally, the testimony of forensic psychologist Dr. Darrell Turner supported the Government's theory of the case.  (Id. at pp. 30–57.)  The jury also saw Defendant's telephone records from the night he abused the minor victims, which established he was awake throughout the night, that he was acting erratically, and that there were gaps in his communications during which time he could have abused MV1 and MV1.  (Docs. 169-7, 169-8, 169-11.)  The jury also heard evidence of phone calls between the minor victims' stepfather and Defendant, during which the stepfather confronted Defendant with the minor victims' allegations that Defendant sexually abused them and Defendant did not deny the allegations but apologized and stated that the minor victims were not lying.  (Doc. 178, pp. 178–223.)  After hearing and seeing this evidence, a reasonable jury could have found Defendant guilty beyond a reasonable doubt as to Counts Two and Four of the Superseding Indictment.

## II.     Motion for New Trial

"Under Federal Rule of Criminal Procedure 33(a), 'the court may vacate any judgment and grant a new trial if the interest of justice so requires.'"  United States v. Pitts, No. 4:19-cr-12, 2019 WL 3408817, at *1 (S.D. Ga. July 26, 2019).  But courts should grant new trials "sparingly and with caution, doing so only in those really exceptional cases."  United States v. Martinez, 763 F.2d 1297, 1313 (11th Cir. 1985) (citation and quotes omitted).  Accordingly, new trials are granted only where circumstances occurred that rendered the trial prejudicially unfair.  See id. at 1315.  "Recognized grounds for a new trial include circumstances where substantial and prejudicial evidentiary errors were committed at trial . . . ."  United States v. Rothwell, No. 3:17CR112/MCR,

2018 WL 11251343, at *4 (N.D. Fla. June 18, 2018) (citing United States v. Hawkins, 905 F.2d 1489, 1493 (11th Cir. 1990)).

> When considering a motion for a new trial based on an alleged evidentiary error, the Court will only order a new trial where "a significant possibility exists that, considering the other evidence presented by both the prosecution and the defense, [the error] has a substantial impact upon the verdict of the jury." United States v. Riley, 434 F. App'x 818, 821 (11th Cir. 2011) (quoting United States v. Arbolaez, 450 F.3d 1283, 1290 (11th Cir. 2006)). But "where an error had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict, reversal is not warranted." Id.

United States v. Scott, No. 4:17-CR-50, 2018 WL 5087237, at *4 (S.D. Ga. Oct. 18, 2018) (alteration in original).

### A.   Whether the Court Erroneously and Prejudicially Prevented Defendant's Counsel from Questioning Dr. Turner

The Government identified Dr. Turner as an expert witness in the field of clinical and forensic psychology and provided notice of his anticipated testimony pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G). (Doc. 37.) Defendant moved to exclude Dr. Turner's testimony, (doc. 122), and the Government responded to that motion, (doc. 133). The United States Magistrate Judge issued a thorough Order denying Defendant's request to exclude Dr. Turner's testimony well before trial. (Doc. 142.) First, the Magistrate Judge rejected Defendant's arguments that deficiencies in the Government's Rule 16 expert disclosure warranted exclusion. (Id. at pp. 4–6.) The Magistrate Judge then found that Dr. Turner's proposed testimony satisfied the requirements of Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). (Id. at pp. 6–14.) As part of that analysis, the Magistrate Judge rejected Defendant's argument that Dr. Turner was unqualified to testify because he testified previously at sentencing hearings and not trials. (Id. at pp. 10–12.) Defendant did not appeal the Magistrate Judge's decision.

In his request for a new trial, Defendant argues the Court erroneously denied his counsel's request to voir dire Dr. Turner before admitting him as an expert witness. (Doc. 188, p. 4.) At trial, after laying out Dr. Turner's qualifications, the Government tendered him as a witness with specialized knowledge qualified to provide opinions about clinical and forensic psychology. (Doc. 178, pp. 30–34.) The following exchange then occurred between the Court and Defendant's counsel.

> [DEFENDANT'S COUNSEL]: Your Honor, I would like to voir dire this witness in respect to his disclosures.
>
> THE COURT: You may. Would you like to do that outside the presence of the jury?
>
> [DEFENDANT'S COUNSEL]: It may be -- that may -- I'm happy to – if we'd like to go to sidebar, I'd like to explain to the Court what I'm getting ready to do.
>
> THE COURT: Sure. Go ahead.
>
> (Sidebar discussion)
>
> [DEFENDANT'S COUNSEL]: Your Honor –
>
> THE COURT: Near the microphone.
>
> [DEFENDANT'S COUNSEL]: Yes, Your Honor. In this disclosure was a list of trials and/or the outcomes. What I intend to do is ask him about each and every one of the ones that are listed as federal trials, because most of these are not trials; they are pleas, and I have the documents to support it. So basically I was going to be asking him about this list, whether he ratified it as part of the affidavit, and then going through these and pointing out that they -- most of them resulted either in pleading or him only testifying in the sentencing, not in the trial portion.
>
> THE COURT: And do you feel that that goes to his admissibility as an expert or his credibility?
>
> [DEFENDANT'S COUNSEL]: I believe that if he has actually committed -- if this was something he supported and he signed into it with the affidavit, I believe it goes to his ability to even be here as an expert witness, because this is a false misrepresentation to the Court, Your Honor.
>
> THE COURT: Okay. I'm going to overrule that, to the extent that's an objection. I'm going to assume for the sake of your objection that what you're telling me

5

would be revealed on voir dire, that he certified a list about trials and that it actually wasn't trials; they were cases where they didn't result in a trial. But I find that that goes to the weight and credibility of his testimony, not to the admissibility.

I find that he has the training, experience and knowledge to offer opinions which would be helpful to the jury here. Issues about prior false statements would go to credibility, not admissibility. I think they've laid the proper foundation. So he's admitted, and I'll tell the jury he's admitted.

[DEFENDANT'S COUNSEL]: Understood, Your Honor.

(Id. at pp. 34–35.)

This exchange reveals that the Court granted Defendant's request to voir dire Dr. Turner. But then Defendant's counsel asked to address the Court at sidebar to explain her intended line of questioning. Once counsel stated what Defendant intended to establish through voir dire, the Court determined that the intended line of questioning would not affect the admissibility of Dr. Turner's opinions. Even if Dr. Turner's Rule 16 disclosures misrepresented his prior testimony in other cases that would not render his opinions inadmissible. "[A] district court cannot exclude an expert because it believes the expert lacks personal credibility because of prior bad acts or other prior instances of untruthfulness. Vigorous cross-examination ensures that these issues of general credibility are properly presented for consideration by the trier of fact." Rink v. Cheminova, Inc., 400 F.3d 1286, 1293 n.7 (11th Cir. 2005).[2] Further, through the Magistrate Judge's pretrial Daubert ruling, the Court had rejected Defendant's arguments centered on the insufficiency of Dr. Turner's Rule 16 disclosures and the fact that he primarily testified at sentencing hearings.

---

[2] Defendant contends that false statements in Dr. Turner's Rule 16 disclosures "goes directly to the third prong of the test for admissibility of expert testimony, reliability." (Doc. 188, p. 5 (citing Rivera v. Ring, 810 F. App'x 859, 863 (11th Cir. 2020).) Defendant confuses the ordinary meaning of "reliability"—that being whether an individual is generally a credible person—with the meaning of "reliability" in the Daubert context. In the Daubert context, the reliability inquiry focuses on whether the expert's opinion is based on scientifically valid reasoning or methodology properly applied to the facts of the case. See United States v. Frazier, 387 F.3d 1244, 1261 (11th Cir. 2004). Defendant's proposed voir dire of Dr. Turner would not have pertained to, much less affected, the Court's analysis of that prong.

(Doc. 142.) For these reasons, the Court committed no error at trial when it admitted Dr. Turner's opinion testimony without first having Defendant's counsel question him about his Rule 16 disclosures.

Moreover, even if the Court erroneously prevented Defendant from questioning Dr. Turner before admitting his testimony, Defendant suffered no prejudice from that error. Defendant only points to the discrepancies in Dr. Turner's disclosures when asserting what Defendant would have questioned Dr. Turner about during voir dire. As the Court explained during the sidebar at trial and in the analysis above, even if that voir dire went as Defendant anticipated, it would not have affected the Court's admissibility analysis. Additionally, the parties had already thoroughly litigated Dr. Turner's disclosures and qualifications before trial, and the Court issued a lengthy order finding his testimony satisfied Rule 702 and <u>Daubert</u>. (Docs. 122, 133, 142.) Before the jury, Defendant cross examined Dr. Turner about his Rule 16 disclosures and the misstatements in them. (Doc. 178, pp. 44–49.) This was the proper avenue for Defendant to explore these issues of credibility, and he suffered no prejudice from being unable to raise them through voir dire.

**B.     Whether the Government Erroneously and Prejudicially Withheld Evidence Regarding Victim 1**

Defendant claims that the "Government did not provide adequate information about [Victim 1], her testimony or her claims for the Defense to prepare for her testimony or locate information that is exculpatory." (Doc. 188, p. 6.) This claim is speculation layered on conjecture. During pretrial litigation, Defendant moved the Court to compel the production of documents and information, (docs. 72, 74), and the Magistrate Judge denied those requests, (doc. 89, 101). The Court need not rehash the authority and analysis in those Orders, but the Defendant's instant Motion contains many of the same flaws as his pretrial requests. Defendant does not cite what documents or information the Government should have provided about Victim 1. He only

7

speculates "[t]here is simply no way that the full information from [Victim 1] was shared." (Doc. 188, p. 6.) Defendant acknowledges that the Government provided him law enforcement reports that contained "a great deal of the testimony offered by [Victim 1]." (Id.) Defendant does not specify what rule or precedent the Government violated as to this information. As the Government explains in its Response, Federal Rule of Criminal Procedure 16 did not obligate the Government to disclose all aspects of the Government's investigation. (Doc. 195, pp. 9–10.)

Defendant does point out that Brady v. Maryland, 373 U.S. 83 (1963), requires the Government to produce all exculpatory evidence. (Doc. 188, pp. 8–9.) But he does not establish how the Government violated that obligation as to Victim 1. His only specific claim is that the Government withheld information "about how [Victim 1] became known to the Government." (Id. at p. 6.) Even if that information were exculpatory, the Government disclosed it to Defendant long before trial. (See doc. 95-1, p. 2 ("[Victim 1] had some concerns about how her parents would react if they found out she disclosed her abuse by [Defendant], but she wanted to let the FBI and AUSA's know which is why she reached out via email.").) Moreover, even if Defendant had established that the Government withheld information about Victim 1—which he has not—and even if he had established that the withheld information was favorable to his defense—which he has not—Defendant has not argued, much less established, that the withheld information was material to the issues at trial and that, therefore, he was prejudiced. See Strickler v. Greene, 527 U.S. 263, 282 (1999) (to obtain relief on Brady claim, defendant must "must convince [the Court] that there is a reasonable probability that the result of the trial would have been different if the suppressed documents had been disclosed to the defense") (internal quotations omitted). Defendant's counsel was able to cross examine Victim 1 about her statements that Defendant abused her. (Doc. 178, pp. 77–83.) That cross-examination included questions about Victim 1's

8

disclosure of the abuse to law enforcement. (Id. at p. 82.) The putative information that Defendant speculates the Government should have disclosed to him would not have materially affected that cross-examination or any other aspect of his trial.

### C. Whether the Court Erroneously and Prejudicially Prevented Defendant from Obtaining or Presenting Evidence of MV1's Sexual Behavior

Well before trial, the Government disclosed to Defendant's counsel that MV1 was found naked in bed with another child around the time that MV1 reported Defendant's abuse, and Defendant notified the Court that he sought to introduce that information at trial pursuant to Federal Rule of Evidence 412(b). (See doc. 100.) The Magistrate Judge construed Defendant's notice as a motion under Rule 412(c)(1) and conducted an *in camera* review as required by Rule 412(c)(2). (Doc. 115.) The Magistrate Judge ruled,

> Defendant may question both MV1 and his mother, identified for purposes of this sealed proceeding as "Martha," about the circumstances surrounding MV1's first report to her of the allegations against the Defendant, and her subsequent reporting of those allegations to either law enforcement or the Department of Children, Youth and Families. Defendant may ask questions designed to establish the timeline of the reporting, which appears to have occurred between 2-3 years after the alleged conduct underlying these charges. Defendant may not, however, elicit additional testimony about the specifics of the "compromising situation" during which MV1 was found naked in a bed with another minor child.

(Doc. 117, p. 6.) As explained in the Magistrate Judge's Order, this ruling comported with the Defendant's request and the Government's agreement. (Id. at pp. 4–5.)

After jury selection but before opening statements, Defendant's counsel notified the Court that she received information from the Government that MV1, who is now an adult, was still engaged in sexual behavior with a minor child. (Doc. 178, p. 6.) Defendant's counsel did not request any relief from the Court but stated that she wanted to bring the issue to the Court's attention out of concern that her cross-examination of MV1 could cause MV1 to make self-incriminating statements. (Id.) The Government's counsel then clarified that, during witness

9

preparation the previous evening, MV1 had disclosed to the Government that he and the other child had touched each other sexually on other occasions but those acts occurred around the time of MV1's disclosure of Defendant's abuse of MV1.  (Id. at pp. 7–8.)  The Government's counsel explained that they made Defendant's counsel aware of that information by email as soon as the Government learned of it.  (Id. at p. 7.)  The Government's counsel stated that she was not concerned about MV1 making self-incriminating statements because the contact between the minors stopped around the time that MV1 reported Defendant's abuse.  (Id. at pp. 7–8.)  The Government's counsel stated that any questioning of MV1 about his sexual behavior outside the time of reporting of Defendant's abuse would likely be objectionable.  (Id.)  Defendant's counsel then reiterated her concern that if MV1 was "still molesting somebody else and that comes out on the stand, that has ramifications for him, or it should."  (Id. at p. 8.)[3]  The Court then stated,

> Well, it sounds like y'all framed the issue well enough. We'll just have to see what happens during the questioning.
> You know, before we get into questions about sexual behavior outside of what's already been ruled upon, that being activity around the time of the reporting, right -- that's what you all have already litigated.  Before we get into that, address it outside the presence of the jury with the Court. Okay?
> If you think it's relevant, if you think it comes in and 412 doesn't keep it out, then I need to understand what the question is going to be before it's posed to the witness. Okay?

(Id. at p. 9.)  Defendant's counsel responded, "Thank you, Your Honor."  (Id.)

During cross-examination of MV1, Defendant established that the first time MV1 reported Defendant's abuse was after MV1's father found MV1 in bed with another child while the other child was naked.  (Id. at p. 168.)  Defendant did not ask or seek to ask any other questions about MV1's sexual behavior.  His counsel did not ask whether MV1 had engaged in a sexual act with

---

[3] To be clear, the Court has no indication that MV1 ever committed any unlawful sexual act much less that he was committing such an act at the time of trial.  Defendant's counsel's statement that he could have been seems to stem from a misconstruing of an email from Government's counsel.

10

the other child, or any other child, on any other occasion. Defendant did not take the Court up on its invitation to raise, outside the presence of the jury, any other questions about MV1's sexual behavior.

In his Motion, Defendant first complains that "[n]o further investigation, interviewing or information other than what was proffered by the Government [regarding MV1's sexual contact with another child] was provided to the Defense." (Doc. 188, p. 7.) Characteristic of Defendant's complaints about discovery, he does not explain what more the Government could have provided. The Government notified defense counsel of this information as soon as it learned of it. Moreover, the following morning, before trial began, Government's counsel detailed for the Court and defense counsel what the Government knew about this information. Defense counsel did not ask for additional information or ask the Court to take any other action regarding the Government's disclosure.

Defendant next argues that "MV1 was not questioned by the Court [about MV1's sexual contact with another child] or anyone other than the interested party." (Id.) This argument is bizarre. The Court is not aware of any authority that would have permitted, much less required, the Court to interview the Government's witness prior to his testimony. Additionally, while the Government could not interfere with Defendant's right to interview prospective witnesses, the Government was not required to provide such witnesses to Defendant. United States v. Pepe, 747 F.2d 632, 655 (11th Cir. 1984) ("[T]he government had no duty, absent a court order, to present its witnesses for interviews; the government's duty was, simply, not to deny access."). In any event, Defendant never asked the Court to interview MV1 or to order MV1 to speak to defense counsel.

Lastly, Defendant argues that "there was no additional time provided to allow for further investigation of the information which could have been admissible." (Doc. 188, p. 7.) Defendant cannot complain that the Court did not grant him relief that he never sought. Any evidentiary issues that Defendant raises in his request for a new trial that he failed to preserve at trial would be reviewed only for plain error. See United States v. Rafferty, 296 F. App'x 788, 795 (11th Cir. 2008). The Court committed no error, much less plain error, as to MV1's sexual behavior. When addressing the Court about this information, Defendant's counsel never asked the Court to continue the trial or to provide time to investigate this information. The Court specifically invited Defendant to apprise the Court if he wanted to cross examine MV1 on additional sexual behavior other than what the Magistrate Judge had ruled on. Defendant chose not to pursue that line of questioning. He also never sought an *in camera* hearing and ruling on the admissibly of this evidence as required by Rule 412(c)(1). Defendant cannot credibly argue that limits on his ability to learn of MV1's sexual behavior tainted his trial when Defendant did not even attempt to fully explore the information that was disclosed. Through the Magistrate Judge's pretrial ruling and the trial, Defendant was afforded all the leeway he sought as to this evidence.

Additionally, even if the Government or the Court had prevented Defendant from discovering MV1's additional sexual behavior or from introducing evidence of that activity, Defendant has not established any prejudice. Evidence of MV1's activity around the time he reported Defendant's abuse was relevant to the timing and potential motives of MV1's report. Thus, as the Magistrate Judge explained in his pretrial order, exclusion of information from that time would likely have violated Defendant's rights guaranteed by the Fifth and Sixth Amendments. (Doc. 117.) But other information, including whether MV1's sexual behavior was ongoing, would have no relevance and would be barred by Rule 412(a). This would be true even if MV1's sexual

behavior was unlawful.[4] See United States v. Thompson, 178 F. Supp. 3d 86, 92–94 (W.D.N.Y. 2016) (preventing defendant from cross examining victims about unlawful sexual behavior barred by Rule 412(a) and evidence "would be substantially outweighed by unfair prejudice and embarrassment to the victims"). Thus, Defendant cannot show that he was unfairly prejudiced because the Court did not *sua sponte* grant him additional time to investigate MV1's sexual behavior or prompt him to present evidence of that behavior.

## CONCLUSION

Defendant has shown no error in his trial, much less error warranting the extreme remedies he seeks. Thus, the Court Defendant **DENIES** Defendant's requests for judgment of acquittal and for a new trial. (Doc. 188.)

**SO ORDERED**, this 2nd day of September, 2025.

_____
R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[4] Again, the Court goes out of its way to point out that there is no evidence that MV1 ever committed any unlawful sexual act much less that he was committing such an act at or around the time of trial.